119 N.J. Super. 264 (1972)
291 A.2d 32
STATE OF NEW JERSEY, PLAINTIFF,
v.
PUBLIC SERVICE ELECTRIC & GAS COMPANY, A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided May 17, 1972.
*265 Mr. Lemuel Skidmore, for claimant J. Malcolm Mossman (Messrs. Hartlaub, Braun, Thorn, Dotten and Skidmore, attorneys).
Mr. Robert W. Dempsey, Deputy Attorney General, for State of New Jersey (Mr. George F. Kugler, Jr., Attorney General, attorney).
SEIDMAN, J.C.C. (temporarily assigned).
This matter is before the court on a claimant's motion to reopen and amend a final judgment of escheat. The basic facts are not in substantial dispute.
The question to be resolved is whether a claimant who has made a timely application to reclaim some escheated property can, more than two years after the filing of the escheat judgment, present a claim for additional escheated property mistakenly omitted from the prior application.
There appears to be no reported case in this State on the precise issue involved herein.
Although the State does not challenge the claimant's allegations, its position is that the application is barred by the expiration of the statutory two-year period. The claimant contends that on the facts here present the court has the power to grant the relief sought notwithstanding the passage of time.
The final judgment, entered September 12, 1969 and amended December 22, 1969, escheated to the State unclaimed interest on bonds of the Public Service Electric & Gas Company or its predecessor companies in the aggregate amount of $16,712.50, and unclaimed funds representing moneys for the redemption of the bonds in the aggregate amount of $13,888.75.
In August 1971 J. Malcolm Mossman, the claimant herein, applied pursuant to N.J.S.A. 2A:37-28 to reopen the *266 judgment in order to establish his ownership of part of the escheated property. According to the supporting affidavits and documents, Mossman, a resident of New York City and described as a person of advanced years who lived alone and failed to pay close attention to his business affairs, claimed ownership of coupons in the total amount of $11,500 which had formerly been attached to 10 $1000, 5% first mortgage bonds of the Hudson County Gas Company (a predecessor of Public Service Electric & Gas Company). His New York counsel and attorney-in-fact, Irving D. Goodstein, related that on or about November 10, 1970 he caused the bonds to be presented for payment to Commercial Trust Company of New Jersey, together with attached uncollected coupons in the sum of $2000 for the period May 1, 1946 to November 1, 1949. He further stated that although the principal of the bonds was paid in full, he was advised by the bank that the funds of the payment of the coupons had escheated to the State. Payment of 380 additional detached coupons, each valued at $25, for the years 1927 through 1945, found in Mossman's safe deposit box, was refused for the same reason. The claimant denied previous knowledge of the escheat proceedings.
The court being satisfied that the claimant was the owner of the coupons and that he had not had actual notice of the escheat action, and no opposition being offered by the State, an order was entered August 13, 1971, amending the final judgment and directing the State Treasurer to pay the sum of $11,476.19 to the claimant, representing the accumulated interest on the bonds less a pro rata share of the expenses incurred by the State.
The present application, filed in March 1972, is "for an order pursuant to N.J.S.A. 2A:37-28 amending the Judgment entered in the above entitled matter on August 13, 1971, which reopened and amended the final judgment entered September 12, 1969, as amended December 22, 1969, to direct that the sum of $10,000, represents (sic) the principal of $10,000 bonds of Hudson County Electric and Gas Company *267 (sic), less expenses of this action attributed thereto," be paid to the claimant.
Goodstein's supporting affidavit sets forth, in substance, that in January 1972 he discovered the bonds had in fact not been redeemed but were being held by Chemical Bank in New York. An attached copy of a Chemical Bank Trust department form, dated November 10, 1970, acknowledges receipt of the bonds which, apparently, were to be sent to the Commercial Trust Company of New Jersey for redemption. The latter bank, on November 19, 1970, informed Chemical Bank that "[c]oupons of Hudson County Gas Company for $2,000.00 are not collectable in usual manner," and suggested that contact be made with the New Jersey Department of the Treasury. The lack of reference to the bonds is not explained. Photocopies of 10 Hudson County Gas Company bonds dated November 1, 1899, and due November 1, 1949, are also attached to the supporting affidavits. Goodstein's position is that he had assumed mistakenly that the bonds had been redeemed.
N.J.S.A. 2A:37-28 deals with the reopening of an escheat judgment:
Any person whose property may have escheated to the State as provided herein, or any rightful heir or next of kin entitled to such property by descent or succession may, within 2 years after the filing of the final judgment in the Superior Court, apply to said court to reopen the said judgment and upon proof that he was without actual knowledge of such escheat action, and upon proof of ownership of such property or the right to possession thereof, the court may in its discretion reopen the judgment and in the event that the aforesaid judgment in part or in whole be revised or amended, the court may direct the State Treasurer to repay such part of the moneys received by the State Treasurer by reason of such judgment, to the party in the amended judgment entitled to have the same, and upon the entry of such final judgment the State Treasurer shall repay the said moneys as provided in such judgment; provided, however, that there shall first be deducted all expenses and charges that may have accrued or been paid out by reason of the entry of the original judgment. * * *
The State argues that property is presumed abandoned and subject to escheat after it has remained unclaimed for *268 at least 14 successive years, N.J.S.A. 2A:37-13, and that a claimant has two years after the escheat judgment to rebut such abandonment. The conclusion it draws is that "the additional two year period relates to the abandonment of the property rather than to an extension of time to a particular claimant." Expressing sympathy for the claimant's plight, the State, nevertheless, urges that the court cannot engraft on the period of limitation established by the Legislature exceptions not contained therein, however inequitable the enforcement of the statute, without such exceptions, may be.
The claimant's thesis is that since he had made a timely application to reopen the judgment, and since the omission of the bonds therefrom resulted from mistake, the intention to abandon the bonds has been rebutted and he should now be allowed to submit further proof of ownership of the bonds in question.
It is clear from the claimant's allegations, if accepted as true, that his earlier failure to assert ownership of the bonds and claim so much of the escheated money as would be required to redeem them came from an erroneous belief that they had already been redeemed. There is no doubt the bonds would otherwise have been included in the prior application, well within the two-year period prescribed by the statute. The bonds were in Goodstein's possession in November 1970. This is established by the Chemical Bank receipt as well as his letter of December 6, 1970 to the Department of the Treasury, in which reference is made to bonds owned by Mossman, "recently redeemed and paid through the Commercial Trust Company of New Jersey," and to "$2000.00 uncollected coupons attached to said bonds covering period 5/1/46 to 11/1/49".
In the case of State by Parsons v. Standard Oil Co., 5 N.J. 281, 307-308 (1950), aff'd 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951), the court held that a judgment of escheat did not terminate the right to rebut the presumption of abandonment and claim the res. This right was reserved to the owner in absolute and unconditional terms *269 for a period of two years after entry of the judgment, exercisable by a motion to reopen the judgment. The court said:
In the performance of this function, the court is not vested with arbitrary discretion. The exercise of the statutory discretion implies conscientious judgment, not arbitrary action. The statutory criteria of ownership or right of possession and a failure of actual notice of the escheat proceeding control the exercise of the power. When these conditions are met, the court must give judgment for the claimant. In the classic terms of Lord Mansfield, judicial discretion "means sound discretion guided by law. It must be governed by rule, not by humour; it must not be arbitrary, vague, and fanciful; but legal and regular." Rex. v. Wilkes, 4 Burr. 2527, 2539, 98 Eng. Rep. Full Reprint 327 (1770). The statute provides no other standard of judicial action. It has in view a mere legal discretion  "a discretion to be exercised in discerning the course prescribed by law; and, when that is discerned, it is the duty of the court to follow it." Osborn v. Bank of United States, 9 Wheaton 738, 866, 6 L.Ed. 204 (1824).
In the exercise of the right granted by statute the claimant herein moved to reopen the judgment within the two-year period and thereby rebutted the presumption of abandonment, at least with respect to the coupons. Having done so, should he now be prevented from claiming the bonds to which the coupons related, omitted through error from the previous timely motion? It is the view of the court that he should not.
Since the escheat statute works a forfeiture, it should be strictly construed. It has been held that any doubt as to whether property is subject to escheat is resolved against the State. State v. United States Steel Corp., 12 N.J. 38, 47 (1953); State, by Parsons v. United States Steel Corp., 22 N.J. 341, 355 (1956). See also, State v. New Jersey National Bank, 117 N.J. Super. 38, 47-48 (Ch. Div. 1971). This principle of strict construction ought to apply as well in determining whether the relief sought herein should be granted.
The purpose of the motion now before the court is to amend the judgment entered on August 13, 1971. To that extent it is, in effect, a motion for relief from a judgment *270 or order pursuant to R. 4:50-1, which provides, in pertinent part, that on motion the court may relieve a party from a final judgment, order or proceeding for any of the reasons stated therein, including mistake (clause (a)), or any other reason justifying relief from the operation of the judgment or order (clause (f)). R. 4:50-2 requires that the motion shall be made within a reasonable time, and for reason (a), not more than one year after the judgment order or proceeding was entered or taken. In either case, the present motion is timely.
Invoking R. 4:50-1 is, in the judgment of the court, an appropriate way to deal with the problem before it. If the motion is considered within the scope of R. 4:50-1(a), the existence of a mistake is evident. However, it also fits within clause (f), and is thus addressed to the broad discretion of the court to be exercised according to equitable principles. The very essence of (f) is its capacity for relief in exceptional situations, and in such cases its boundaries are as expansive as the need to achieve equity and justice. Court Investment Co. v. Perillo, 48 N.J. 334, 341 (1966). See also Hodgson v. Applegate, 31 N.J. 29, 41 (1959); In re Manfredini, 24 N.J. Super. 59, 64 (App. Div. 1952); In re Estate of Cory, 98 N.J. Super. 208, 216 (Ch. Div. 1967); Bauer v. Griffin, 104 N.J. Super. 530, 540 (Law Div. 1969), aff'd 108 N.J. Super. 414 (App. Div. 1970).
In the case of State, by Parsons v. Standard Oil Co., 5 N.J. Super. 460, 468 (Ch. Div. 1949), mod. 5 N.J. 281 (1950), the court said that in the composition of the Escheat Act the Legislature expressly conferred upon the former Court of Chancery exclusive jurisdiction over the contemplated proceedings, presumably with the intention that such proceedings would be governed by the principles and practices of a court of equity.
It should also be noted that the subject matter of the claim now being asserted is essentially the same as that contained in the prior application. The situation is analogous to permitting a complaint to be amended, even though the *271 statutes of limitations has run, where it states no new cause of action but merely asserts a claim arising out of the transaction described in the original complaint.
It is the conclusion of the court, on the basis of the facts here present and for the reasons hereinabove set forth, that the claimant should be permitted to reopen the judgment of August 13, 1971, and, upon proof of ownership of the bonds in question and of the pertinent allegations in the moving papers, to have the judgment revised and amended accordingly.
An appropriate form of order should be submitted pursuant to R. 4:42-1.